IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**VERNEVE GREEN,**
    Plaintiff,

v.                                                                No:  3:07cv330/RV/MD

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
    Defendant.
_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Green's application for disability insurance benefits under Title II of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits claiming an onset of disability as of January 1, 2002.  The claim was denied initially and on reconsideration and plaintiff timely requested a hearing before an Administrative

Law Judge (ALJ).  A hearing was held on August 10, 2006 at which plaintiff was represented by counsel and testified.  The ALJ rendered an unfavorable decision on December 26, 2006 (tr. 23-30) and the Appeals Council declined review (tr. 5-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe conditions of a torn meniscus in her knee, carpal tunnel syndrome, and mild degenerative changes of the spine, but that she did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; that plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and ten pounds frequently, to walk and/or stand for six hours in an eight hour workday and sit for six hours in an eight hour workday, to climb stairs, balance, crouch, crawl, and stoop occasionally but not to kneel or climb ladders, ropes or scaffolds, and was limited to frequent reaching and occasional handling and fingering; that plaintiff last met the insured status requirements of the Act on December 31, 2004, meaning that she had to prove that she was disabled prior to her last date insured (LDI); that through the LDI, her past relevant work as a hospital liaison did not require the performance of work-related activities precluded by her residual functional capacity; and that she was not disabled at any time from January 1, 2002 through the LDI, December 31, 2004.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence.  *Falge, supra*.  The court must determine whether the Commissioner's

decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

Case No: 3:07cv330/RV/MD

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Shortly before the alleged onset date of January 1, 2002 plaintiff was seen by Bashar Lutfi, M.D., a neurologist, to rule out radiculopathy in her legs. An electromyogram/nerve conduction velocity study of the lower extremities was read as normal (tr. 238). Plaintiff returned to Dr. Lutfi on December 10, 2001 complaining of migraine headaches and low back pain. Her migraine had reportedly improved about 75% but she continued to have low back pain that radiated into both legs. She also claimed left leg weakness and numbness (tr. 237). The last record of plaintiff seeing Dr. Lutfi is dated January 10, 2002 when she returned with the same complaints. Her headaches were better controlled and responded to Midrin but she continued to have low back pain and some leg weakness. An MRI of the lumbar spine revealed only early degenerative disc disease at L4-5 but no herniation, and a bone scan done on December 17, 2001 was unremarkable (tr. 236). At about the

same time, in late January 2002, plaintiff was admitted to the hospital for chest pain and a cardiology consult, but all her tests, including an echocardiogram stress test were read as normal (tr. 240-247).

Plaintiff's personal physician was Luzviminda Ordonez, M.D., a family practitioner. Dr. Ordonez' records span the period from June 27, 2002 to June 26, 2006 (tr. 402-446, 503-506). Dr. Ordonez saw plaintiff on a regular basis for standard medical care, noting various complaints, including complaints of low back pain. However, Dr. Ordonez did not record any specific identifiable medical findings before plaintiff's LDI, and treated plaintiff conservatively.

Plaintiff was also seen for an extended period by an orthopedic surgeon, Cory Gaiser, D.O. Dr. Gaiser's records run from April 25, 2003 to June 15, 2006 (tr. 452-501, 508-516). Dr. Gaiser's only significant medical findings were based on lumbar x-rays taken on April 25, 2003, which were essentially normal but with some osteophyte formation in the thoracic spine, an MRI of the lumbar spine done on April 11, 2003 that showed disc dessication at L4-5 with minimal bulge but no neural impingement and facet hypertrophy at multiple levels, and a CT scan of the lumbar spine on the same date with the same results (tr. 501). Plaintiff's complaints were subjective, and on one occasion, on July 9, 2003, Dr. Gaiser noted that plaintiff gave exaggerated responses to light touch and range of motion tests (tr. 498). Dr. Gaiser's assessment was facet syndrome, and plaintiff was referred to Dr. Zwingelberg for facet injection (tr. 500-501). Dr. Gaiser performed surgery on plaintiff's left knee after her LDI.

Plaintiff first saw Dr. Zwingelberg, a pain management specialist, on July 18, 2003. He took a history of diffuse pain across the plaintiff's lower back as well as her upper back, ankles, hips, the backs of her heels, neck, and headaches and stomach problems. On physical examination deep tendon reflexes were difficult to obtain due to the patient's pain with attempted knee reflex testing. Her

musculoskeletal strength was normal through all muscle groups of the legs although she gave way significantly on the left side, complaining of pain with any degree of muscle testing. Straight leg raising was negative except for diffuse back pain but there was no pain with forced internal or external rotation of the hips. There was pain diffusely over the low back with palpation (tr. 274-276). Dr. Zwingelberg scheduled plaintiff for facet injections, which were done on July 25, 2003 at L4-5 and L5-1 on the right, and L3-4, L4-5 and L5-S1 on the left (tr. 272-273). She returned on August 8, 2003 and told Dr. Zwingelberg that she had 75% relief of her symptoms after her facet injections, but still complained of general musculoskeletal pain. Dr. Zwingelberg commented that plaintiff had responded somewhat to facet injections and that he would see her on an as needed basis for consideration of further injections (tr. 270-271).

Plaintiff returned on August 29, 2003 stating that her lower back pain had returned. Her physical examination was unchanged. Dr. Zwingelberg told plaintiff that she had too many myofascial and musculoskeletal complaints to consider any therapeutic interventional pain procedures and she was referred back to Dr. Gaiser (tr. 268-269). There is no record that plaintiff has seen Dr. Zwingelberg since that time. Eight months later, on April 22, 2004, Dr. Zwingelberg filled out a form at the request of plaintiff's counsel in which he opined that plaintiff could walk or stand for less than one hour, sit for two to four hours, could only occasionally lift up to 10 pounds and never lift greater than that amount and would have to rest every hour for at least ten minutes (tr. 364-365).

Plaintiff was referred by the state agency to Syed Jilani, M.D. for a disability evaluation. Plaintiff told Dr. Jilani that she had pain in her low back and shoulders as well as headaches and dizziness. She indicated that her symptoms persisted on a daily basis and got worse with stress, sudden movements, lifting, or even using the toilet. She indicated that the pain was moderately severe and varied from day

to day with good days and some bad days but mostly persistent pain. She could walk for five to ten minutes and used a cane to keep her balance. She drove to the appointment, and indicated that she could do some housework but that her husband did most of the laundry and cooking. Plaintiff entered and exited the examination room normally, although she mentioned a lot of aches and pains on range of motion examination. There was no spinal tenderness, kyphosis or scoliosis. There was tenderness over all the muscle and myofascial planes and over her low back and extremities with subjective complaints of tenderness and pressure over the muscles. These points were not consistent with tender spots of fibromyalgia. Dr. Jilani found that there were no objective physical findings consistent with plaintiff's complaints. Her range of motion was subjectively limited but there was no gross deformity or redness, heat, tenderness, or swelling in any joint (tr. 366-367).

Plaintiff was also referred for two psychological evaluations, but since she has not claimed any mental health deficiencies, those evaluations will not be discussed here (tr. 255-257, 372-374).

After the hearing, the ALJ sent written interrogatories to Peter Schoscheim, M.D. He was provided with a copy of plaintiff's relevant medical records and opined that the impairments established by the medical evidence, combined or separately, did not meet or medically equal any impairment described in the listings. Specifically, Dr. Schoscheim stated that there was no objective evidence of physical disability on examination (tr. 517).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to assign proper weight to the opinion of Dr. Zwingelberg, in relying on the opinion of a non-examining physician, and in failing to obtain vocational expert testimony to support his findings that plaintiff was able to work, and that plaintiff was disabled from her onset date as a

matter of law.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.      Treating physician opinion.

Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler,* 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; consistency

with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 C.F.R. § § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Plaintiff contends that the ALJ did not articulate his reasons for rejecting Dr. Zwingelberg's opinions, but stated only that Dr. Zwingelberg provided no explanation for his findings, which were not supported by the medical evidence, and that he relied primarily on the plaintiff's subjective complaints of pain. The undersigned finds that the reasons stated were sufficient. As outlined above, there was very little in the way of positive medical findings on the many tests administered to plaintiff. She undoubtedly had arthritic changes in her low back. However, the degree of a person's pain with these kinds of problems are subjective to the patient. "[T]he ascertainment of the existence of an actual disability depend[s] on

---

[1] *MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[2]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

Here the ALJ specifically found that plaintiff's subjective complaints of pain were not fully credible.  This was well within his realm of judging.  Since the ALJ further noted that even Dr. Zwingelberg relied largely on plaintiff's subjective complaints, and that Dr. Zwingelberg had seen plaintiff for a total of four times in a six week period, and never again, his stated reasons for rejecting Dr. Zwingelberg's opinion were supported by substantial record evidence.  Plaintiff is not entitled to reversal on this ground.

---

[2]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

2. <u>Non-examining physician.</u>

Plaintiff next contends that the ALJ should not have relied on the opinion of Dr. Schosheim. As noted above, the opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. The flaw in plaintiff's argument is that the ALJ did not rely solely on Dr. Schoscheim's opinion. Rather, the ALJ asked Dr. Schoscheim to review the entire record. The ALJ had already rejected Dr. Zwingelberg's opinion, and had noted that no other physician had found plaintiff to be disabled. The ALJ had also noted the examination by Dr. Gilani, which was entirely benign. Given these findings, it was appropriate for the ALJ to use Dr. Schosheim's opinion in helping to determining plaintiff's residual functional capacity. *See Edwards v. Sullivan*, 937 F.2d 580 (11th Cir. 1991) (holding that a non-examining physician's opinion can be relied upon where it is consistent with the record overall). Plaintiff is not entitled to reversal on this ground.

3. <u>Vocational Expert Testimony.</u>

Finally, plaintiff contends that the ALJ should have obtained vocational expert testimony to determine whether plaintiff could return to her past relevant work. What plaintiff overlooks is that the ALJ found that plaintiff was not disabled at the fourth step in the sequential process, not the fifth. The Eleventh Circuit has held that vocational expert testimony is not necessary if the plaintiff has not proven in ability to return to her past relevant work. *Lamb v. Bowen,* 847 F.2d 698, 704 (11th Cir. 1988). The regulations do not require vocational expert testimony. 20 C.F.R. § 404.1556(e). What is required is for the ALJ to determine the demands of the plaintiff's prior work, and this can be done by considering the plaintiff's own description of her duties, as was done in this case. Here plaintiff had worked as a hospital liaison worker, and by her description of her duties she was not precluded

from working based on the residual functional capacity that the ALJ ultimately found. She is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 22nd day of May, 2008.


/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**

Case No: 3:07cv330/RV/MD